THE STATE OF MISSOURI, Respondent, v. NORMAN STURGES, Appellant.

St. Louis Court of Appeals, February 16, 1892.

1. Criminal Law : DISTURBANCE OF PEACE. What is "loud and offensive or indecent conversation," within the meaning of the statute for the punishment of a disturbance of the peace by such conversation (R. S. 1889, sec. 3784), must depend largely

upon the person by whom the language is uttered, the person or persons to whom it is uttered, and the occasion on which it is uttered. And *held*, that the evidence in this cause warranted a conviction for such disturbance of the peace.

2. ———— : INSTRUCTIONS NOT WARRANTED BY THE EVIDENCE. To give an instruction in a criminal case which allows the jury to find the defendant guilty of a criminal act, or of an ingredient of a criminal offense, of which there is no evidence, is prejudicial error.

*Appeal from the Lawrence Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED AND REMANDED.

*Henry Brumback*, for appellant.

*Joseph French*, Prosecuting Attorney, for respondent.

THOMPSON, J.—This was an indictment under section 3784 of the Revised Statutes for disturbing the peace of W. W. Jernigan. The defendant was convicted, and prosecutes this appeal. The statute is as follows: "If any person or persons shall wilfully disturb the peace of any neighborhood, or of any family, or any person, by loud and unusual noise, loud and offensive or indecent conversation, or by threatening, quarreling, challenging or fighting, every person so offending shall, upon conviction, be adjudged guilty of a misdemeanor." R. S., sec. 3784. The indictment follows the language of the statute. The evidence for the state tended to show that Jernigan was a justice of the peace, and that certain causes had been instituted before him against the defendant for selling liquor to minors without the consent of their parents or guardians, that while he was making out a transcript preparatory to a change of venue to another justice, there being a number of persons in his office, the defendant came in and requested to see the papers, and accused him, Jernigan, of being the person who had set the prosecutions on foot. The

strongest language imputed to the defendent by any of the witnesses for the state is conveyed in the testimony of Jernigan himself as follows : "He said I was the very—I can't say whether he said the very scoundrel, or rascal or son-of-a-bitch, that was getting up those cases against him. * * * That was what he seemed to be mad about. He kept jawing at me while I was at the discharge of my official duties, and I asked him not to bother me while I was engaged in my official business. He seemed to get worse. I told him I would impose a fine of $10 on him. He said if he had a fine to pay, he would pay a bigger fine than that was, or something of that kind,—I don't remember what his exact words were. Probably some of the other witnesses can tell you. I was so frustrated then by him, that I cannot tell you what the language was that he used. But it was insulting. I ordered him to hush, and stop abusing me and bothering me in my official business. My court was going on, and he said he didn't ask any difference of me. I called on a man who had been serving some papers, some subpœnaes and summons in the case,—the regular constable was not there,—I ordered him to arrest Sturges [the defendant] ; but he didn't do so, and I saw that I could not do any business there, and I raised up from my chair, and took my hat and put it on my head, and pressed my way out through the crowd ; and he still had the paper I handed him to read ; and I just turned the key in the door and locked him up in there, and went to get the marshal and brought him back, and told him to keep Sturges quiet. He came in and told Sturges to be quiet, and he didn't interfere with me any more. He handed me the paper, and went out." In answer to the question, what the manner of the defendant was when thus talking, the witness said : "He talked as though he was mad at me about it. He said I was the party as did it. I don't remember whether he said 'party' or 'rascal' or 'son-of-a-bitch.' Any way it was very insulting." In answer to the question what

effect did it have, the witness said: "It actually aroused me a little. I didn't like for a man to accuse me of a thing of that sort when it was not the case, and when I was in my official business, and to disturb me so I could not do the business before me." Several of the bystanders, who overheard the conversation, testified as to it, both for the state and for the defendant. It also appeared that the conversation was loud enough to attract into the room some who were standing outside. The other witnesses for the state gave a much milder version of the conversation than that given by the prosecuting witness; but all the witnesses agreed that the defendant accused the prosecuting witness, while engaged in the presence of the assembled crowd in his official duties, of being the party or person who had set on foot the criminal prosecutions which he had been about to try. In regard to the point about which the testimony of the prosecuting witness was so indefinite, what the reply of the defendant was when the witness threatened to fine him $10, one of the witnesses for the state testified: "To the best of my recollection when Squire Jernigan fined him $10, he told him that if he would hold his hand on his butt till he got it, he would be grayer than he was then. I think that is the expression."

What will constitute "loud and offensive or indecent conversation," within the meaning of the statute, must depend largely upon the person by whom the language is uttered, the person or persons to whom it is uttered, and the occasion on which it is uttered. Conversation might not be regarded as loud, offensive or indecent within the meaning of the statute, when uttered by a member of a gang of street laborers to one of the others, or when uttered in a tavern, or in a dramshop, or even in a political meeting; when the same conversation might well be regarded as coming within the prohibition of the statute, if uttered in a church during divine service, or in a court of justice,

whatever its jurisdiction, pending the transaction of judicial business. It is to be recalled that the severe part of the offense proved was, that the defendant uttered in loud words against a judicial officer, while engaged in his judicial duties, the accusation that he, the officer, had set on foot against the speaker certain criminal charges which were then about to be tried before the officer,—thus accusing him of attempting to play in the same case the role of prosecutor and judge. It is to be kept in mind, moreover, that this accusation was made in language so loud that it was heard by several perhaps all of the bystanders, and that the discussion which followed between the utterer of it and the prosecuting witness attracted persons into the room from the outside. When, in addition to this, we consider the indecent expression imputed to the defendant by one of his own witnesses, as having been uttered by him when the justice threatened to fine him, we shall have no difficulty in concluding that the evidence substantially tended to show that the defendant had been guilty of disturbing the peace of the prosecuting witness by conversation at once loud, offensive and indecent,— which, if believed by the jury, made out a case within the statute.

The three instructions given by the court which are complained of were as follows: "1. The court instructs you that, if you believe from the evidence that the defendant, Norman Sturges, at the county of Lawrence and state of Missouri, in the year 1891, prior to the eleventh day of February, 1891, did wilfully disturb the peace of W. W. Jernigan by loud and offensive conversation, or by threatening, you should find defendant guilty as charged in the indictment, and assess his punishment at either imprisonment in the county jail not exceeding six months, or at a fine not exceeding $200, or by both such fine and imprisonment.

"2. Unless from the evidence you believe defendant wilfully disturbed the peace of W. W. Jernigan by either loud or offensive conversation, or threatening, you should find defendant not guilty.

"3. In determining whether defendant is guilty or not guilty, and whether the peace of W. W. Jernigan was disturbed by the words and manner of defendant, you should consider what defendant said, and his manner at the time, and whether or not he was threatening Jernigan, or was using loud and offensive language to him, and you should also consider what Jernigan said and his manner."

It is also perceived that the first two of these instructions submitted to the jury the hypothesis, whether the defendant had disturbed the peace of the prosecuting witness by threatening, and that the last of them left it to the jury to find (among other things) "whether or not he was threatening Jernigan." There was no evidence of any language or act on the part of the defendant, which by any interpretation could be construed into a threat against the prosecuting witness. These instructions, therefore, submitted to the jury a hypothesis of fact of which there was no evidence, thus intimating to them that, in the opinion of the court, there was evidence tending to show such hypothesis. That to give an instruction in a criminal case, which allows the jury to find the defendant guilty of a criminal act, or of an ingredient of a criminal offense, of which there is no evidence, is error and prejudicial to the defendant, is a proposition which need not be argued.

For the error of giving these instructions the judgment must be reversed, and the cause remanded. It is so ordered. All the judges concur.